[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Waterbury. The plaintiff and the defendant, Maria Romilda Ferreira Campos, were married at Sal Pedro do suacui, Minas Gerais, Brazil on January 24, 1987. Both parties have resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child, issue of this marriage, Nathalia Campos, born October 16, 1991. No other minor children have been born to the defendant wife since the date of the marriage of the parties. There has been a receipt of state assistance.
The parties separated in May, 1997.
The parties are in dispute as to the cause of the breakdown of their marriage. From the evidence presented, the court finds that the defendant's conduct is the cause of the breakdown of the marriage.
The plaintiff came to the United States in 1989.
The plaintiff presently grosses $350 weekly from his self-employment as an auto mechanic and nets $310 weekly. He has total weekly expenses of $537. He has liabilities totaling $28,976. He owns real estate in Brazil that he purchased on September 30, 1992, that has a fair market value of $4000. He has $750 in bank accounts.
When the defendant came to the United States from Brazil, the parties resided in Newark, New Jersey for approximately two years where the plaintiff was employed as an auto mechanic.
After Newark, New Jersey, the parties moved to Pompano Beach, Florida, for approximately one year. The plaintiff was employed in Pompano Beach, Florida as an auto mechanic for Brazil Auto Sales. CT Page 14607
The parties moved from Pompano Beach, Florida to the Danbury, Connecticut area. The plaintiff was employed in Danbury, Connecticut at United Brazil Auto Sales III as an auto mechanic for approximately one year. He then went to work for Metro Floors, Inc., whose office was in New Jersey. While employed by Metro Floors, Inc., he worked all over the United States installing floors. He was the supervisor for up to twelve crew members. He was employed by Metro Floors, Inc. for approximately four years ending in 1998. While employed by Metro Floors, Inc., he became ill in Detroit, Michigan and was hospitalized for approximately one week in 1998. During the period of 1977 to 1998, he lived in Naugatuck and for a few months lived in New Jersey. After Metro Floors, Inc., the plaintiff was self-employed for approximately one year as an auto mechanic. He then became employed by Custom Air Systems in Bridgeport for more than a year between October, 2000 and February 1, 2002. While employed at Custom Air, his starting wage was $15 hourly, and it had been increased to $17 hourly when he left. The parties are in dispute as to the reason the plaintiff left his employment at Custom Air Systems. The court finds that the reason that he left his employment was that he quit because he wanted to work under the table and collect unemployment insurance. The court finds that the action by the plaintiff in quitting that employment constitutes a voluntary reduction in earnings. During the calendar year 2001, the total gross earnings of the plaintiff at Custom Air Systems, Inc. was $29,518.74, which is a gross weekly average of approximately $567 less deductions for federal and state income tax. In setting the financial orders, the court has based those orders in part On the plaintiffs gross weekly income of $567 less deductions. After Custom Air, he was then employed in New Jersey by Global Auto Sales for three months.
The defendant came to the United States approximately seven months after the plaintiff. She was born on October 6, 1966 in Brazil. She has some allergies; otherwise, her health is good. She took one course at Naugatuck Valley Community College in 1999. She did not take any courses in the calendar year 2000. She resumed at Naugatuck Valley Community College in the fall of 2001. She is not currently enrolled at Naugatuck Valley Community College. She will have to pay off a loan to Naugatuck Valley Community College that has a balance of $1347 in order to resume her courses. The cost per credit at Naugatuck Valley Community College is $73.50 plus school fees which increase the cost per credit hour to $122.75. She can obtain her associate's degree in social work after completing an additional 61 credit hours.
The defendant is employed part-time cleaning houses. She has an average gross weekly income of $60. She has gross weekly expenses of $422.99. She CT Page 14608 has liabilities totaling $7735.47. She owns a 1999 Hyundai with a fair market value of $3400 and a loan balance of $6000. She has bank accounts totaling $433. The court finds that due to the age of the minor child, Nathalia, that it is in the best interest of the child that the plaintiff not seek full-time employment so as to allow her to be home when the child returns from school.
When the defendant first came to the United States she was employed as kitchen help at a bar in Newark, New Jersey.
During the time the parties resided in Pompano Beach, Florida, the defendant worked doing house cleaning.
The plaintiff has a warm, close and loving relationship with the minor child, Nathalia Campos. Nathalia and the older child of the plaintiffs relationship with another woman have a good relationship. Nathalia prefers to spend more time with the plaintiff than she has been spending and have more contact with him. She has serious behavioral problems when visitation with the plaintiff does not take place. Nathalia also has a warm and close relationship with her mother.
As of January 16, 2002, there was an arrearage due to the state of Connecticut in the amount of $727.06.
Each party may have a valid workers' compensation claim for an injury sustained at work.
The court finds that a reasonable fee for services by the guardian ad litem is a total of $6106.61, which includes costs.
 ORDERS
This court has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issue of property division, and has considered the provision of § 46b-62 regarding the issue of attorney's fees, and has considered the provisions of § 46b-56 regarding the issue of custody and visitation, and has considered the provision of § 46b-84 as well as the child support guidelines regarding the issues of support. The court enters the following orders:
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried. CT Page 14609
B. BY WAY OF ALIMONY
1. The plaintiff is to pay to the defendant alimony in the sum of $65 per week. Alimony is to terminate upon the earliest of the following events: (a) the death of the plaintiff, (b) the death of the defendant, (c) the remarriage of the defendant. Alimony shall also terminate June 1, 2006. This will allow the defendant sufficient time to complete her courses for an associate's degree and obtain employment. The term of alimony cannot be extended.
2. The provisions of §§ 46b-86 (a) and (b) are applicable.
3. The plaintiff is also ordered to pay alimony to the state of Connecticut in the amount of $1 per year.
C. BY WAY OF SUPPORT
1. The plaintiff is to pay to the defendant support in the amount of $92 per week. This order is in accordance with the child support guidelines based on the plaintiff's earning capacity. He is to pay 65.51 percent of unreimbursed medical and qualifying childcare costs and she is to pay 33.49 percent of unreimbursed medical and qualifying childcare costs.
2. The plaintiff is to maintain medical insurance for the benefit of the minor child as it is available through his employment until the child reaches the age of eighteen or if still in high school full-time until graduation from high school or age 19, whichever occurs first.
3. The plaintiff has the right to claim the child as an exemption for federal and state income tax purposes for each year that he is current in the alimony and support orders entered in this decision on December 31 of each such year.
D. BY WAY OF CUSTODY AND VISITATION
1. The guardian ad litem has submitted a set of proposed orders dated June 19, 2002, which the court has reviewed and finds to be fair and equitable. All of those orders are found to be in the best interests of the child and have been incorporated by reference except as hereinafter stated:
(a) Paragraph 1.6 of the proposed orders is amended by adding the following: The plaintiff has the election to either participate in CT Page 14610 the scheduled activity or have "makeup" time on a day preceding or following the day that was pre-empted.
 (b) Section 1.8 B is amended by adding the following: The first weekend of the month starts on the first Friday of each month.
 (c) Paragraph 1.8 D is amended by adding the following: The months that have five weekends are those months in which there are five Saturdays.
 (d) Paragraph 2.2(a) is amended by amending the first sentence to read as follows: Each parent shall have two weeks of exclusive time with the minor child for vacation time and said time need not be taken consecutively, but shall be taken either in one or two week segments.
(e) Paragraph 2.4 is eliminated.
E. BY WAY OF PROPERTY ORDERS
1. The plaintiff is ordered to pay all of the liabilities shown on his financial affidavit and hold the defendant harmless therefrom.
2. The defendant is ordered to pay all of the liabilities shown on her financial affidavit and hold the plaintiff harmless therefrom.
3. This court finds that the defendant is entitled to a one-half interest in the Brazil property owned by the plaintiff, which one-half interest has a fair market value of $2000. The court also finds that at the present time, there is an arrearage on alimony and support totaling $1516. The court also has awarded to counsel for the defendant $486 in attorney's fees as the result of finding the plaintiff in contempt. The combined alimony arrearage and attorney's fees amount to $2000. This court, therefore, orders the plaintiff to transfer to the defendant all of his right, title and interest in the Brazil property within thirty days from the date this decision is filed, which transfer will then pay in full the arrearage and the attorney's fees that he owes to counsel for the defendant. The defendant, in turn, is responsible for paying those attorney's fees to her attorney.
4. The bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff.
5. The bank accounts shown on the defendant's financial affidavit are awarded to the defendant. CT Page 14611
6. Each party is to retain their own workers' compensation claim.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either the plaintiff or the defendant.
2. The parties are to divide equally the guardian ad litem fees. The plaintiff is to pay $100 and the defendant $50 per month to the guardian ad litem towards their shares of fees, commencing December 12, 2002, and on the twelfth day of each month thereafter.
G. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file by December 12, 2002 and send it to the counsel for the defendant for signature who, in turn, is to send it to the guardian ad litem for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns within 30 days after such returns have been filed for so long as there is an outstanding alimony and/or support order or any alimony and/or support arrearage.
___________________ Axelrod, J.T.R. CT Page 14612